UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dona P.,[1] Plaintiff, v. Frank Bisignano, Commissioner of the Social Security Administration, Defendant. | ) | C/A No. 9:25-cv-09622-RMG-MHC **REPORT AND RECOMMENDATION** |

Plaintiff Dona P. (Plaintiff) filed the Complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Administrative Law Judge's (ALJ's) final decision denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act (Act). This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). For the reasons that follow, the undersigned recommends that the ALJ's decision be reversed and remanded for further administrative review.

## I. BACKGROUND[2]

Plaintiff applied for DIB on April 2, 2021, alleging disability beginning February 19, 2021. R.pp. 189–200. Plaintiff's claim was denied initially and upon reconsideration, and Plaintiff then requested a hearing before an ALJ. R.pp. 56–74, 103–05. A hearing, at which Plaintiff, represented by a non-attorney representative, and a vocational expert testified, was held on May 14, 2024. R.pp. 33–52. The ALJ thereafter denied Plaintiff's claims in a decision issued on July 31, 2024,

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, because of significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Citations to the record refer to the page numbers in the Social Security Administration Record. *See* ECF No. 12.

finding that Plaintiff was not disabled from the alleged date of onset through the date of the decision. R.pp. 16–25. The Appeals Council denied Plaintiff's request for review on June 6, 2025. R.pp. 2–8.

Because this Court writes primarily for the parties who are familiar with the facts, the Court dispenses with a lengthy recitation of the medical history from the relevant period. To the extent specific records or information are relevant to or at issue in this case, they are addressed within the Discussion section below.

## II. APPLICABLE LAW

### A. Scope of Review

Jurisdiction of this Court is pursuant to 42 U.S.C. § 405(g). Under this section, judicial review of a final decision regarding disability benefits is limited to determining (1) whether the factual findings are supported by substantial evidence, and (2) whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). Accordingly, a reviewing court must uphold the final decision when "an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017) (internal quotation marks omitted).

"Substantial evidence" is an evidentiary standard that is not high: it is "more than a mere scintilla" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). A reviewing court does not reweigh conflicts in evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

decision falls on the [ALJ].” *Id*. (alteration in original) (internal quotation marks and citation omitted). However, this limited review does not mean the findings of an ALJ are to be mechanically accepted, as the “statutorily granted review contemplates more than an uncritical rubber stamping of the administrative action.” *Howard v. Saul*, 408 F. Supp. 3d 721, 725–26 (D.S.C. 2019) (quoting *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969)).

**B. Social Security Disability Evaluation Process**

To be considered “disabled” within the meaning of the Social Security Act, a claimant must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423. The Social Security Administration established a five-step sequential procedure to evaluate whether an individual is disabled for purposes of receiving benefits. *See* 20 C.F.R. § 404.1520; *see also Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (outlining the questions asked in the five-step procedure). The burden rests with the claimant to make the necessary showings at each of the first four steps to prove disability. *Mascio*, 780 F.3d at 634–35. If the claimant fails to carry her burden, she is found not disabled. *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). If the claimant is successful at each of the first four steps, the burden shifts to the Commissioner at step five. *Id*.

At the first step, the ALJ must determine whether the claimant has engaged in substantial gainful activity since her alleged disability onset date. 20 C.F.R. § 404.1520(b). At step two, the ALJ determines whether the claimant has an impairment or combination of impairments that meet the regulations’ severity and duration requirements. *Id.* § 404.1520(c). At step three, the ALJ considers whether the severe impairment meets the criteria of an impairment listed in Appendix 1

of 20 C.F.R. part 404, subpart P or is equal to a listed impairment. If so, the claimant is automatically eligible for benefits; if not, before moving on to step four, the ALJ assesses the claimant's residual functional capacity (RFC).[3] *Id.* § 404.1520(d), (e); *Lewis*, 858 F.3d at 861.

At step four, the ALJ determines whether, despite the severe impairment, the claimant retains the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(e), (f). If the ALJ finds the claimant capable of performing her past relevant work, she is not disabled. *Id.* § 404.1520(f). If the requirements to perform the claimant's past relevant work exceed her RFC, then the ALJ goes on to the final step.

At step five, the burden of proof shifts to the Social Security Administration to show that the claimant can perform other jobs existing in significant numbers in the national economy, considering the claimant's age, education, work experience, and RFC. *Id.* § 404.1520(g); *Mascio*, 780 F.3d at 634–35. Typically, the Commissioner offers this evidence through the testimony of a vocational expert answering hypotheticals that incorporate the claimant's limitations. *Mascio*, 780 F.3d at 635. "If the Commissioner meets h[is] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Id.*

## III. ADMINISTRATIVE FINDINGS

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Plaintiff was disabled from the alleged date of onset, February 19, 2021. R.pp. 16–25. The ALJ found, in pertinent part:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.[4]

[3] The RFC is "the most the claimant can still do despite physical and mental limitations that affect her ability to work." *Mascio*, 780 F.3d at 635 (internal quotation marks and citations omitted).

[4] Plaintiff highlights that her date last insured for DIB purposes is actually December 31, 2026. ECF No. 14 at 2 & n.1 (citing R.p. 201).

> 2. The claimant has not engaged in substantial gainful activity since February 19, 2021, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: cardiovascular accident and shoulder pain. (20 CFR 404.1520(c)). . . .
>
> The claimant has the following nonsevere impairment: hypertension. There are no significant limitations, or significant treatment associated with this impairment. . . .
> . . .
> The claimant's medically determinable mental impairment[] of adjustment disorder with anxious and depressed mood[] does not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and is therefore nonsevere. (25F).
> . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently reach over head with her right upper extremity and occasionally perform postural activities, including balancing, stooping, crouching, crawling and climbing stairs and ramps, but never climbing ladder ropes scaffolds. . . .
>
> 6. The claimant is capable of performing past relevant work as a Policy and Information Clerk, DOT # 249.262-010, performed at a sedentary level with an SVP of six. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). . . .
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 19, 2021, through the date of this decision (20 CFR 404.1520(f)).

R.pp. 18–25.

## IV. <u>DISCUSSION</u>

Plaintiff argues that remand is required because the ALJ failed to adopt mental limitations in the RFC or explain why such limitations were not necessary. ECF No. 14 at 2–18. The Commissioner responds that the ALJ's decision is supported by substantial evidence. ECF No. 15

at 5–11. Plaintiff's reply notes that the ALJ did not apply the correct legal standards in this case and that the error is particularly harmful because the ALJ found that Plaintiff was able to perform her previous work as a policy and information clerk that was skilled, demanding, and required a high reasoning level. ECF No. 16 at 1–5. Upon review, the undersigned agrees that the decision should be reversed and remanded for further review.

**A. Special Technique to Evaluate Mental Impairments**

An ALJ must follow a "special technique" to determine the severity of a claimant's mental impairments. 20 C.F.R. § 404.1520a(a). First, the ALJ evaluates the claimant's pertinent symptoms, signs, and laboratory findings to determine if she has a medically determinable mental impairment. *Id.* § 404.1520a(b)(1). Second, assuming the claimant does have a medically determinable mental impairment, the ALJ rates the claimant's degree of functional limitation resulting from the impairment(s). *Id.* § 404.1520a(b)(2).

To rate a claimant's degree of functional limitation, the ALJ determines the degree to which the impairment interferes with the claimant's overall "ability to function independently, appropriately, effectively, and on a sustained basis" in four broad areas of mental functioning: (1) understanding, remembering, or applying information;[5] (2) interacting with others;[6] (3) concentrating, persisting, or maintaining pace;[7] and (4) adapting or managing oneself.[8] *Id.* § 404.1520a(b), (c)(2)–(4). The functional areas are rated on a five-point scale: none, mild,

[5] This first area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(1).

[6] This second area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(2).

[7] The third area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(3).

[8] The final area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(E)(4).

moderate, marked, and extreme.[9] *Id.* § 404.1520a(c)(4).

The ratings of these four broad areas of mental functioning affect whether the claimant's mental impairment will be considered severe or not severe. *Id.* § 404.1520a(d). The ALJ will generally find that a claimant's mental impairment is non-severe if the limitations are rated as "none" or "mild," "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" *See id.* § 404.1520a(d)(1); *see also Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) ("An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." (alterations and internal quotation marks omitted)). If the ALJ determines the impairment is severe, he then determines "whether it qualifies as a listed impairment." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017); 20 C.F.R. § 404.1520a(d)(2).

Even when a mental impairment is found to be non-severe, the ALJ must nevertheless consider it in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *see also Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions

[9] A marked limitation means the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d). An extreme limitation means the individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e). In contrast, if a claimant's functional limitations are rated at "none" or "mild," the ALJ will generally conclude that the claimant's impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). "Moderate" limitations indicate that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair," while "[m]ild" limitations indicate that a claimant's functioning "is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00F(2)(b), (c).

imposed by all of an individual's impairments, even those that are not 'severe.'").[10]

**B. Determination of Plaintiff's Mental Limitations**

At step two of the five-step sequential evaluation process to determine whether Plaintiff is disabled, the ALJ stated the following:

> The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.
>
> The claimant's medically determinable mental impairment[] of adjustment disorder with anxious and depressed mood[] does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. (25F).
>
> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. While the claimant testified that she has difficulty with spoken language since her stroke, she testified that she has no difficulties remembers [sic] her medications. (Hearing testimony). She noted in her Function report that her though [sic] process and motor skills were affected by her stroke, she could pay attention for an hour or so and that she was okay to fair in her ability to follow written and spoken instructions. (3E). She also reported that she compensates for her decrease[d] ability to recall by setting timers. (4E). Dr. Ritz's cognitive assessment on May 18, 2022, did not substantiate the claimant's reports of significant memory or other cognitive deficits. (25F/5).
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant reported that she did not have problems getting along with others, she goes out with her husband and visits others in person or on the phone. (4E). Dr. Ritz's psychological examination on May 18, 2022, supported his finding that neither her cognitive nor her emotional limitations impacted her ability to interact socially. (25F/5).

---

[10] Social Security Rulings, or "SSRs," are "interpretations by the Social Security Administration of the Social Security Act." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995). They do not carry the force of law but are binding on all components of the Social Security Administration, 20 C.F.R. § 402.160(b)(1), as well as on ALJs when they are adjudicating social security cases. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

> The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant reported in her Function Report that she has some problems with concentration and completing tasks, which impact her ability to focus and put thoughts together, and it takes her longer to perform personal care after her stroke. (4E). The claimant's husband confirmed her struggles with focus and putting thoughts together in his Third-Party Function Report as well. (3E).
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. The claimant reported that she has never been fired or laid off of work due to an inability to manage herself and has not has a problem with authority figures. (4E). While she reported in her Function Report that she had not handled stress well since her CVA, on February 25, 2021, the claimant reported to her therapists that she occasionally feels mild stress. (3F/11).
>
> Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, it is nonsevere (20 CFR 404.1520a(d)(1)).
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

R.pp. 19–20 (emphases added). After noting Plaintiff's mild limitations in the categories of (1) understanding, remembering, or applying information and (2) concentrating, persisting, or maintaining pace, and finding that Plaintiff's adjustment disorder was a nonsevere medically determinable mental impairment, the ALJ proceeded to the RFC determination.

**C. RFC Assessment Generally**

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *7. As set forth above, in evaluating an RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-

by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "'Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work' of which he believes the claimant to be capable." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Monroe*, 826 F.3d at 179).

**D. Determination of Plaintiff's RFC & Subsequent Analysis**

The ALJ determined that Plaintiff could perform light work, with certain physical and postural limitations. R.pp. 20–21. The ALJ did not include any mental limitations in the RFC. In explaining this determination of Plaintiff's RFC, the ALJ did not specifically refer to Plaintiff's adjustment disorder or mental limitations, other than a general reference to mental impairments in his description of the two-step process to evaluate Plaintiff's symptoms. R.p. 21 ("In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.").

However, the ALJ noted Plaintiff's testimony regarding difficulties communicating and focusing before determining that "the record does not support long-term limitations suggested by [Plaintiff]" from the cardiovascular accident suffered in February 2021, which serves as the alleged onset of Plaintiff's disability. R.p. 21. The ALJ cited normal neurological exam findings and an absence of functional or cognitive impairments in assessment findings, and he found to be persuasive the consultative mental examination of Dr. Douglas R. Ritz, which reported that Plaintiff's testing showed her skills to be consistent with average abilities and she demonstrated a

"capability to function *in at least an unskilled work*, is not a skilled work setting[.]" R.pp. 22–24 (emphasis added) (apparent error in original).

Particularly of note here, the ALJ also found persuasive the prior administrative psychological findings of Doctors Timothy Laskis and Edward Waller. R.pp. 24–25 (citing R.pp. 58–59, 68–69). These physicians both found mild limitations in the same two categories as the ALJ: understanding, remembering, and applying information; and concentrating, persisting, and maintaining pace. R.pp. 58–59, 68–69. In noting that the opinions were persuasive, the ALJ stated that the opinions "are consistent with the medical evidence of records at the hearing level[, and] [a]ccordingly, *the undersigned has incorporated the same into the claimant's residual functional capacity as outlined above, by limiting her to unskilled tasks*." R.pp. 24–25 (emphases added).

**E. Contention of Error**

Plaintiff asserts that the ALJ's failure to account for her mild mental limitations within the RFC is basis for remand, stating "the ALJ's RFC finding was facially defective because it failed to in any way account for Plaintiff's proven and admitted mental functional limitations." ECF No. 14 at 5, 15. For the following reasons, the undersigned agrees.

Importantly, it is undisputed that the SSA rules do not require ALJs to include specific RFC restrictions connected to mild limitations associated with non-severe impairments. *Shirley H. v. Kijakazi*, 710 F. Supp. 3d 458, 465 (D.S.C. 2024); *see also Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) (declining to extend holding in *Mascio* to cases involving only mild mental limitations). However, as Plaintiff correctly notes, the rules *do* require that ALJs consider "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5.

In this case, the RFC focuses exclusively on Plaintiff's physical impairments. R.pp. 20–21.

Nor does the RFC analysis consider Plaintiff's adjustment disorder or any impact that might be posed by the mild mental limitations noted in step two. This absence is especially peculiar when the ALJ suggested that he incorporated into Plaintiff's RFC skill limitations based on the persuasive findings of the psychological examiners, and when he noted that he limited Plaintiff to "unskilled tasks" but found that Plaintiff was capable of performing her past, *skilled*, work.[11] *See* R.pp. 24–25. Accordingly, the ALJ's decision does not comply with Social Security Ruling 96-8p and is not supported by substantial evidence.

Though the ALJ was not obligated to include mental limitations in Plaintiff's RFC, he was obligated to *explain* why mental limitations were not included. Particularly when the opinion seems to suggest that the ALJ found limitations to be necessary, *see* R.pp. 24–25 (ALJ noting he limited Plaintiff to unskilled tasks), the undersigned is left to guess as to how and why the ALJ determined that the mild limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace did not impact her ability to perform her past relevant work. *See, e.g.*, *Lindsay v. Kijakazi*, No. 6:20-cv-02607-KFM, 2021 WL 9583495, at *4 (D.S.C. Sep. 17, 2021) (remanding where ALJ failed to consider plaintiff's depression in the RFC assessment after concluding it was a non-severe impairment that imposed mild limitations in areas of mental functioning at step two); *Cox v. Saul*, No. 4:19-cv-02717-TER, 2021 WL 973345, at *5 (D.S.C. Mar. 16, 2021) (remanding when ALJ failed to consider the effects of plaintiff's non-severe impairment of migraines when assessing the plaintiff's RFC and thus, "the RFC narrative and determination [were] unsupported by substantial evidence as the ability to sustain work given the impairment of migraine headaches was not discussed by the ALJ"); *Anderson v. Saul*, No. 4:19-cv-00846-MGL-TER, 2020 WL 3579745, at *5 (D.S.C. June 25, 2020) (remanding "where

[11] *See infra* Section IV.F.

mental impairments, regardless of severity, were not discussed in formulating the RFC"), *report and recommendation adopted*, No. 4:19-CV-00846-MGL, 2020 WL 3548810 (D.S.C. June 30, 2020); *Anthony M. v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020) (remanding because "the ALJ was required to consider the combined effect of Plaintiff's severe and nonsevere impairments in his RFC discussion, including his nonsevere depression and anxiety"); *cf. Perry v. Colvin*, No. 2:15-CV-01145, 2016 WL 1183155, at *5 (S.D.W. Va. Mar. 28, 2016) ("[A]lthough some consideration is required, there is no requirement that the RFC reflect a claimant's non-severe impairments *to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a claimant's ability to work*." (emphasis added)).

**F. Plaintiff's Past Relevant Work**

This gap in the ALJ's analysis is particularly troubling because the ALJ concluded that Plaintiff could perform only one job—Policy and Information Clerk—which is considered skilled work, with a specific vocational preparation (SVP) rating of 6 and a DOT reasoning level of 4. *See* ECF No. 14 at 6–8 (citing Dictionary of Occupational Titles (DOT) § 249.262-010). It can hardly be said that Plaintiff's mental limitations are not relevant to her ability to perform this work. *See* Appendix C: Components of the Definition Trailer, DOT, 1991 WL 688702 (level 4 reasoning requires a worker to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists," "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form," "[e]xamples of rational systems include: bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation."). Indeed, Plaintiff was an individual of advanced age on the date of her DIB application, *see* ECF No. 14 at 2, 16 (citing

R.pp. 192, 199), and there is no evidence she has transferable skills, meaning that she would be disabled pursuant to the Medical-Vocational Guidelines (Grid Rules) if she could not perform her past relevant work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06.

Based on the above, the undersigned cannot conclude that the ALJ's decision is supported by substantial evidence and free from legal error. *See Titles II & XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in Gen.*, SSR 82-62, 1982 WL 31386, at *4 (S.S.A. Jan. 1, 1982) ("The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion."); *see also Anderson*, 2020 WL 3579745, at *4–5 ("[E]ven a non-severe impairment may prevent [past relevant work] or narrow the range of other work an individual may still be able to do; thus, non-severe impairments may be critical to the outcome of a claim. . . . It cannot be said here that the ALJ gave reasons and explanation, in accordance with SSR 96-8p, supported by substantial evidence for the RFC determination, where mental impairments, regardless of severity, were not discussed in formulating the RFC and mental limitation opinions by a treating physician were not assigned weight or mentioned by the ALJ."); *Anderson v. Kijakazi*, No. 2:20-CV-3237-MBS, 2022 WL 391549, at *4–5 (D.S.C. Feb. 9, 2022) ("[T]he ALJ erred when he omitted from his RFC assessment a limitation that reflects his finding of Plaintiff's mild mental impairments and failed to state why any such limitation is not necessary[,]" when he found medical opinion incorporating RFC limitations persuasive but did not account for those limitations in the RFC or otherwise explain their absence); *Robin R. v. Comm'r of Soc. Sec.*, No. 4:24-CV-00026, 2025 WL 2702046, at *10–11 (W.D. Va. Sep. 23, 2025) ("Perhaps the ALJ considered [claimant's] mental limitations in crafting her RFC and limitations, but her lack of explanation as to how these limitations affect [claimant's] RFC leaves this court to 'guess at how the ALJ arrived at [her] conclusions[.]'" (quoting *Mascio*, 780 F.3d at 637)); *Dolly H. v. Kijakazi*, No. 2:22-CV-00573,

2023 WL 6566603, at *6–7 (S.D.W. Va. Aug. 31, 2023) (collecting cases throughout Fourth Circuit since *Mascio* in noting that though "courts in this circuit have not agreed on whether an ALJ's failure to discuss in the RFC analysis the work-related effects of mild limitations in paragraph B criteria automatically mandates remand," "one common thread throughout all of [the decisions] is that remand is required when the ALJ's decision, taken as a whole, is insufficient to allow for meaningful review, or fails to build 'an accurate and logical bridge from the evidence to [the] conclusion,' or both" (quoting *Monroe*, 826 F.3d at 189)); *report and recommendation adopted*, No. 2:22-CV-00573, 2023 WL 6174413 (S.D.W. Va. Sep. 22, 2023).

Upon review, the undersigned is left to guess as to why the ALJ made the determinations he did. *See Mascio*, 780 F.3d at 636–37. The ALJ's failure to explain the lack of limitations, particularly when his opinion suggests that he found those limitations persuasive and purportedly incorporated them into his RFC analysis to limit Plaintiff to *unskilled* tasks, strikes the undersigned as error. *See Shirley H.*, 710 F. Supp. 3d at 465–66 (finding ALJ's failure to explain lack of mental limitations in RFC particularly troubling when individual was of advanced age and would be disabled but for ability to perform previous skilled work). Plainly, "a reasonable mind" cannot accept this determination and the evidence offered to support it "as adequate to support a conclusion." *See Biestek*, 587 U.S. at 103.

## V. <u>CONCLUSION</u>

It is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative review.

**The parties are referred to the Notice Page attached hereto.**

July 29, 2026
Charleston, South Carolina

Molly H. Cherry
United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).